*984 LUCERO, Circuit Judge,
concurring.
I join in the opinion of my esteemed májority colleagues, but write separately to provide what I consider to be a missing step in the analysis. Without deciding whether the Highway Beautification Act (“HBA”) applies to Indian lands, the majority concludes that if the HBA does apply to Indian lands, it is subject to federal, not state, enforcement. The problem with this reasoning is that if the HBA does not apply to Indian lands, any remaining discussion would be unnecessary. Thus, it does not appear that this is an appropriate case upon which to proceed by rhetorical assumption. The parties have directly presented and briefed the question of HBA application to Indian lands, and it is my considered judgment that we must first address that question directly. Only having decided this issue may we properly proceed to the conclusion that the state may not enforce HBA regulations on Indian lands.
We consider the question of whether the HBA applies to Indian lands under the shadow of Federal Power Commission v. Tuscarora, which states that “a general statute in terms applying to all persons includes Indians and their property interests.” 362 U.S. 99, 116, 80 S.Ct. 543, 4 L.Ed.2d 584 (1960). This broad statement was not essential to Tuscarora’s narrow holding, as the statute in question specifically addressed its application on Indian lands. Id. at 112, 80 S.Ct. 543. A subsequent Supreme Court case did not apply Tuscarora. Merrion v. Jicarilla Apache Tribe, 455 U.S. 130, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982) (holding that a federal statute governing oil and gas leases did not bar a tribe’s power to tax and stating that “ ‘a proper respect both for tribal sovereignty itself and for the plenary authority of Congress in this area cautions that we tread lightly in the absence of clear indications of legislative intent’”) (quoting Santa Clara Pueblo v. Martinez, 436 U.S. 49, 60, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978)). At least three circuits have interpreted the Court’s statements in Merrion to limit the broad Tuscarora principle. See Donovan v. Navajo Forest Products Industries, 692 F.2d 709, 713 (10th Cir.1982); Smart v. State Farm Ins. Co., 868 F.2d 929 (7th Cir.1989); United States v. Farris, 624 F.2d 890, 893-894 (9th Cir.1980).
Reconciling the Court’s varying statements in Merrion, Santa Clara Pueblo, and Tuscarora, this circuit and others have acknowledged three exceptions to Tuscarora’s rule that federal statutes of general applicability apply to Indian lands. These exceptions, pronounced in Nero v. Cherokee Nation of Oklahoma, are applied if “(1) the law touches ‘exclusive rights of self-governance in purely intramural-matters’; (2) the application of the law to the tribe would ‘abrogate rights guaranteed by Indian treaties’; or (3) there is proof ‘by legislative history or some other means that Congress intended [the law] not to apply to Indians on their reservations.’ ” 892 F.2d 1457, 1462-63 (10th Cir.1989) (refusing to find that civil rights law created a cause of action against a tribe) (quoting Donovan v. Coeur d’Alene Tribal Farm, 751 F.2d 1113, 1116 (9th Cir.1985)); see also EEOC v. Cherokee Nation, 871 F.2d 937 (10th Cir.1989) (refusing to apply Age Discrimination in Employment Act because it abrogated specific treaty rights); NLRB v. Pueblo of San Juan, 280 F.3d 1278, 1283-84 (10th Cir.2000) (refusing to apply section of National Labor Relations Act because doing so would abrogate tribe’s right of self-government).
None of the three Nero exceptions apply in this case. First, the appellees do not allege that application of the Highway Beautification Act would abrogate the *985 tribe’s treaty rights. Second, they do not argue that the HBA touches the tribe’s rights of self-governance in purely intramural matters. Third, the history of the statute does not suggest that Congress intended to exclude Indian lands from advertising restrictions.
Because petitioners do not establish any of the Nero exceptions, the Tuscarora general principle of applicability controls and compels the conclusion that the HBA does apply to Indian lands. I note that the Interior Board of Indian Affairs came to the opposite conclusion when addressing this question in 1979. Morongo Band of Mission Indians v. Sacramento Area Office, 7 IBIA 299, 1979 WL 21375 (1979). The Board’s conclusion, however, turned on its finding that the term “reservation” in § 131(h) of the HBA is ambiguous, a conclusion I do not find plausible based on the plain language of the act. See United States v. Portneuf-Marsh Valley Irr. Co., 13 Fed. 601, 604 (9th Cir.1914) (holding “reservations” includes Indian reservations).
Determining that the HBA does apply to Indian lands does not answer the question as to whether enforcement of the statute is a state or federal function. Again, I agree with my colleagues that this is a federal and not a state function but write to amplify the analysis to include consideration of the statute’s language.
Section 131(h) of the HBA states that the relevant lands “shall be controlled in accordance with the provisions of this section.” 23 U.S.C. § 131(h) (emphasis added). The use of the phrase “in accordance with” suggests that the remainder of the section provides the substantive standard to be applied. It does not determine the party intended to enforce those standards. Had Congress stated that such lands should be controlled “by” the provisions of this section, perhaps the statute could be read to suggest delegation to the states to enforce HBA regulations on federal lands. However, the language “in accordance with” leaves the question of enforcement unanswered. •
Because § 131(h) does not address the question of enforcement, we are guided by general presumptions regarding the application of regulations on Indian lands. There is a presumption against state jurisdiction on Indian lands. California v. Cabazon Band of Mission Indians, 480 U.S. 202, 215, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987). Indian tribes “retain ‘attributes of sovereignty over both their members and their territory.’ ” Id. at 207, 107 S.Ct. 1083 (quoting United States v. Mazurie, 419 U.S. 554, 557, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975)). Furthermore, “ ‘tribal sovereignty is dependent on, and subordinate to, only the Federal Government, not the states.’ ” Cabazon, 480 U.S. at 207, 107 S.Ct. 1083 (quoting Washington v. Confederated Tribes of the Colville Indian Reservation, 447 U.S. 134, 154, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980)).
Notwithstanding this presumption, states are permitted to enforce regulations when Congress explicitly delegates authority to do so. Cabazon, 480 U.S. at 215, 107 S.Ct. 1083. The HBA includes no such delegation. The HBA is enforced through zoning and the power of eminent domain. 23 U.S.C. § 131(c), (g), (r). There is no indication that the HBA delegated to the states the right to use these powers on Indian lands. See People ex rel. Dep’t of Transp. v. Naegele Outdoor Adver. Co., 38 Cal.3d 509, 213 Cal.Rptr. 247, 698 P.2d 150, 156 (1985); Morongo Band of Mission Indians v. Sacramento Area Office, 7 IBIA 299, 1979 WL 21375 (1975). A previous version of the statute, on the other hand, provided for enforcement by the federal agency with jurisdiction over the public lands in question. Section 131(d) of the *986 1958 Highway Act, the precursor to the HBA, dealt directly with the enforcement of outdoor advertising regulations on public lands. That section stated:
Whenever any portion of the Interstate System is located upon or adjacent to any public lands or reservations of the United States, the Secretary of Commerce may make such arrangements and enter into such agreements with the agency having jurisdiction over such lands or reservations as may be necessary to carry out the national policy set forth in subsection (a).
72 Stats. 885, § 131(d), (1958). When the HBA was passed in 1965, section 131(d) was repealed and replaced by the current § 131(h). The House Report published when the HBA was passed states:
This section simply extends to all public lands and reservations of the United States which are adjacent to any portion of the Interstate System or the primary system the same controls covering other roads which are subject to this legislation.
H.R.Rep. No. 89-1084, at 3710-3736 (1965). The California Supreme Court has interpreted this history to suggest that Congress intended the same means of enforcement to apply .in the 1965 act as had applied in the 1958 act. Naegele, 213 Cal.Rptr. 247, 698 P.2d at 155. Given the presumption against state enforcement, and the fact that a prior version of the statute provided for enforcement by the agency with jurisdiction over the public lands in question, I conclude that § 131(h) requires enforcement not by the state but by the BIA.
On my independent review of the record, I also agree with the majority that the state did not argue below that the BIA had an obligation to enforce the HBA. Had the state presented this argument to the district court, I may well have reached a different conclusion than the one I come to today. Appellants having failed to do so, I agree that affirmance is appropriate.